UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VALLEY MANAGEMENT, INC. and ROSAIDA RIVERA,<br>      Plaintiffs | ) ) ) ) ) | |
| v. | ) ) ) | Civil Action No. 10-30082-MAP |
| BOSTON ROAD MOBILE HOME PARK TENANTS' ASSOCIATION, INC., JUDY D'AMBROSIA and TED WILLIAMS,<br>      Defendants | ) ) ) ) ) | |

REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION FOR
REMAND AND REQUEST FOR ATTORNEYS' FEES AND COSTS (Document No. 2)
July 8, 2010

NEIMAN, U.S.M.J.

Presently before the court is an amended complaint filed by Valley Management, Inc. ("Valley Management") and Rosaida Rivera (together "Plaintiffs") against the Boston Road Mobile Home Park Tenants' Association, Inc. ("Boston Road") and two of its officers, Judy D'Ambrosia and Ted Williams (together "Defendants"). Shortly after filing the amended complaint, but more than one year after the state court proceedings had begun, Defendants removed the action to this forum. Plaintiffs now claim that removal was untimely under 28 U.S.C. § 1446(b) and corresponding case law.

Plaintiffs' motion to remand has been referred to this court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. For the reasons that follow, the court will recommend that Plaintiffs' motion to remand be allowed but that their accompanying request for attorneys' fees and costs be denied.

I. T̲HRESHOLD̲ I̲SSUE̲

The court first notes that, despite authority for it to rule directly on non-dispositive motions, it has chosen to proceed here via a report and recommendation in order to avoid a potential procedural quagmire, *i.e.*, the unresolved question of whether a magistrate judge has the authority to "hear and determine" motions to remand, 28 U.S.C. § 636(b)(1)(A), or may only issue "proposed findings of fact and recommendations," 28 U.S.C. § 636(b)(1)(B).  A brief explanation is in order.

Although the First Circuit itself has yet to resolve this question, *see Unauthorized Practice of Law Committee v. Gordon*, 979 F.2d 11, 12-13 (1st Cir. 1992); *see also Albright v. FDIC*, 21 F.3d 419, 1994 WL 109047, at *2 n.4 (1st Cir. Apr. 1, 1994) (unpublished), several district and magistrate judges within this circuit, including the undersigned in *Ceria v. Town of Wendell*, 443 F. Supp. 2d 94, 95 n.1 (D. Mass. 2006), have held or assumed that a remand motion is a "non-dispositive" matter which a magistrate judge may "hear and decide" pursuant to Fed. R. Civ. P. 72(a) and section 636(b)(1)(A), *see Societa Anonima Lucchese Olii E. Vini v. Catania Spagna Corp.*, 440 F. Supp. 461, 462 (D. Mass. 1977) (Freedman, J.); *see also BMJ Foods Puerto Rico, Inc. v. Metromedia Steakhouses Co.*, 562 F. Supp. 2d 229, 231 (D.P.R. 2008) (McGiverin, M.J.); *Delta Dental v. Blue Cross & Blue Shield*, 942 F. Supp. 740, 743-46 (D.R.I. 1996) (Lagueux, C.J.) (affirming remand order issued by Boudewyns, M.J.); *Jacobsen v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 594 F. Supp. 583, 586 (D. Me. 1984) (Carter, J.) (affirming remand order issued by Hornby, M.); *LaFazia v. Ecolab, Inc.*, 2006 WL 3613771, at *1 (D.R.I. Dec. 11, 2006) (Almond, M.J.); *but see*

2

*Hart Enters., Inc. v. Cheshire Sanitation, Inc.*, 1999 WL 33117188, at *1 (D. Me. Apr. 14, 1999) (Cohen, M.J.) (assuming opposite view).  A host of district and magistrate judges from other circuits support this particular exercise of magistrate judge authority. *See, e.g.*, *Johnson v. Wyeth*, 313 F. Supp. 2d 1272, 1272-73 (N.D. Ala. 2004) (collecting cases); *Young v. James*, 168 F.R.D. 24, 26-27 (E.D. Va. 1996); *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 147 F.R.D. 122, 123-24 (S.D. Miss. 1993).

On the other hand, at least four circuit courts of appeals -- the Second, Third, Sixth, and Tenth -- have concluded otherwise, *i.e.*, that a remand motion is a "dispositive" matter for which a magistrate judge may offer only a "recommended" ruling pursuant to Fed. R. Civ. P. 72(b) and section 636(b)(1)(B).  *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 264-66 (2d Cir. 2008); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514-17 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 994-97 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 145-46 (3d Cir. 1998).  In fact, the most recent of those decisions implies that the First Circuit might eventually align itself with this position.  *See Williams*, 527 F.3d at 265 (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5-6 (1st Cir. 1999)).  However, a more recent decision from the First Circuit itself might be read to augur otherwise.  *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (holding that "a motion to stay litigation pending arbitration," while perhaps "an important step in the life of a case," is ultimately "not dispositive of either the case or any claim or defense within it").

Since the referral of the instant motion does not indicate whether the court

should proceed under Rule 72(a) and section 636(b)(1)(A), treating the motion as non-dispositive, or Rule 72(b) and section 636(b)(1)(B), treating the motion as dispositive, the court believes that the most practical solution is to do essentially what it did in both *Therrien v. Hamilton*, 881 F. Supp. 76, 77-78 (D. Mass. 1995) (rep. and rec. adopted by Ponsor, J.) and *Stefanik v. City of Holyoke*, 597 F. Supp. 2d 184, 185 (D. Mass. 2009) (rep. and rec. adopted by Ponsor, J.), that is, offer the district court a recommendation on the remand motion pursuant to Rule 72(b) and section 636(b)(1)(B).  *See also Venable v. T-Mobile USA, Inc.*, 2007 WL 4270809, at n.1 (D. Me. Dec. 3, 2007) (Kravchuk, M.J.) (deciding that, to avoid the debate, "[t]he foolproof approach [is to] offer the Court a recommendation on the motion" to remand).  While the court still believes that there is a strong argument that such a motion is "non-dispositive," which it may "hear and decide" pursuant to Fed. R. Civ. P. 72(a) and section 636(b)(1)(A), *cf. PowerShare, Inc.*, 597 F.3d at 14; *Darney v. Dragon Prods. Co.*, 266 F.R.D. 23, 24 n.1 (D. Me. 2010) (applying *Powershare, Inc.* to support broad magistrate judge authority in other contexts), the court will proceed via a report and recommendation in the interest of moving this case along expeditiously.

## II. BACKGROUND

On March 26, 2009, Plaintiffs filed a twelve-count complaint against Defendants in Hampden County Superior Court; five counts were brought on behalf of Valley Management, Boston Road's former property managers, and seven counts were brought on behalf of Rivera, Valley Management's on-site employee.  Among the myriad state-based causes of action, were two federal civil rights claims.  Rivera, being

4

of Puerto Rican heritage, alleged national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), while Valley Management alleged a similar violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA").

The essential allegations of the original complaint filed in Superior Court revolved around D'Ambrosia and Williams, both of whom are Caucasian and members of Boston Road's Board of Directors.  (See Compl. ¶¶ 16-33.)  Among other contentions, the complaint alleged that D'Ambrosia, when campaigning for Board President, "pledged that if elected she would work to prevent . . . Rivera from admitting African-Americans and Hispanics into the Park and that she would work to get . . . Rivera terminated."  (*Id.* ¶ 18.)  The complaint also alleged that Williams, "during an executive session meeting of the Board . . . which had been convened to address issues of security, . . . said words to the effect of 'if you could get rid of the blacks and Puerto Ricans, we would be better off here.'"  (*Id.* ¶ 33.)  Finally, the complaint alleged that, following these discriminatory comments and other actions, Boston Road and/or D'Ambrosia terminated Rivera and forced the withdrawal of Valley Management from its pre-existing Management Agreement.  (*Id.* ¶¶ 39-40.)

Service of the complaint was returned on or about April 9, 2009, and the case was litigated over the course of the next year in Superior Court.  Defendants filed an answer and counterclaim, there were several hearings, and discovery on the initial complaint was substantially completed.

On April 2, 2010, Plaintiffs moved to amend their complaint to add additional

5

claims.  That motion was granted, over Defendants' opposition and without a hearing, and the amended complaint was docketed on April 12, 2010.  In addition to the previous twelve claims, all of which remained, the amended complaint included seven federal and two state law causes of action.  However, but for one small addition -- mention of a hand-delivered letter from Boston Road notifying Plaintiffs of the termination of both Valley Management's contract and Rivera's employment (Amended Compl. ¶¶ 38-39) -- the factual allegations were identical and each new cause of action specifically incorporated the same facts as had existed in the original complaint.

The added federal claims alleged civil rights violations under 42 U.S.C. §§ 1981, 1982, 1985 and 1986.  In brief, section 1981 protects citizens from discrimination in the making of contracts; section 1982 guarantees all citizens the same rights to "inherit, purchase, lease, sell, hold and convey" real estate as "enjoyed by . . . white citizens"; section 1985 makes it unlawful to conspire for the purpose of, *inter alia*, depriving anyone of the equal protection of the law, impeding the due course of justice so as to "deny any citizen the equal protection of the laws . . ." or to injure a person or "his property for . . . attempting to enforce the right of any person . . . to the equal protection of the laws;" and section 1986 makes it unlawful for anyone with the power to prevent violations under section 1985 to fail to do so.

Defendants removed the action to this court on April 28, 2010.  Promptly thereafter, Plaintiffs filed their motion to remand wherein they argue that Defendants waived their right to removal under 28 U.S.C. § 1446(b) by not doing so in the first thirty days following service of process of the original complaint and, further, that their

6

removal rights were not revived by the filing of the amended complaint.  For their part,

Defendants answered the amended complaint -- in this court -- and thereafter filed an

opposition to Plaintiffs' motion to remand.  Plaintiffs then filed a reply brief which

included an affidavit of their attorney that, in part, described the timing of their

amendment.  (See discussion, *infra*.)

III. DISCUSSION

The essential question raised by Plaintiffs' motion to remand is whether the

instant action, originally filed in state court, was properly removed to federal court after

the thirty-day removal period provided under 28 U.S.C. § 1446(b) (hereinafter "section

1446(b)") had expired.  In this court's estimation, the answer to that question is "no"

and, hence, the case should be remanded.  The court will describe why this is so and

then turn to a brief discussion of Plaintiffs' request for attorneys' fees and costs.

A.  Remand Question

Section 1446(b) begins by providing that civil actions initiated in state court may

typically be removed only during an initial thirty-day window:

> The notice of removal of a civil action or proceeding shall be
> filed within thirty days after the receipt by the defendant,
> through service or otherwise, of a copy of the initial pleading
> setting forth the claim for relief upon which such action or
> proceeding is based, or within thirty days after the service of
> summons upon the defendant if such initial pleading has
> been filed in court and is not required to be served on the
> defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  Here, as indicated, Plaintiffs' state court complaint was filed on

March 26, 2009, and service on Defendants was returned on April 9, 2009.

7

Accordingly, the initial thirty-day window had long been closed by the time Defendants subsequently removed the action to this forum.

Section 1446(b), however, also allows for late removal in certain limited circumstances:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Id.* Since, as is evident, this exception may be invoked only "[i]f the case stated by the initial pleading is not removable," the parties agree that it does not apply here. As described, this action initially raised two federal questions -- violations of both Title VII and the FHA -- and, as such, was immediately removable. *See* 28 U.S.C. § 1441.

Nonetheless, Defendants maintain that they are left with the possibility, if not the right, of removal under a judicially created "revival" exception most fully discussed by Judge Richard A. Posner in *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982). *See also Johnson v. Heublein Inc.*, 227 F.3d 236 (5th Cir. 2000); *Doe v. Florida Int'l Univ. Bd. of Trs.*, 464 F. Supp. 2d 1259 (S.D. Fla. 2006); *Louisiana Farm Bureau Cas. Ins. Co. v. Michelin Tire Corp.*, 207 F. Supp. 2d 524 (M.D. La. 2002); *Dunn v. Gaiam, Inc.*, 166 F. Supp. 2d 1273 (C.D. Cal. 2001). While the First Circuit has apparently not yet considered this "revival exception," several lower courts in this circuit have cited Judge Posner's *Wilson* decision with

8

approval.  *See, e.g., Burke v. Atlantic Fuels Marketing Corp.*, 775 F. Supp. 474 (D.

Mass. 1991); *Davidson v. Life Ins. Co.*, 716 F. Supp. 674 (D. Mass 1989); *McKenna v.

Brassard*, 704 F. Supp. 309 (D. Mass. 1989).  The parties too appear to agree on the

viability of this judicially-created exception, albeit not upon its application here.

Accordingly, the court will accept the possibility of judicial revival.  In so doing,

however, the court will bear in mind that this exception, as Judge Posner noted, "does

not lend itself to decision by verbal talismans."  *Wilson*, 668 F.2d at 966.  Rather,

several factors must be weighed with no single one being necessarily determinative.

*See id.* at 965-66.

According to *Wilson*, judicial revival of removal rights is allowed in only two

circumstances.  *See id.*  First, revival may be allowed when the amended complaint "so

changes the nature of [the] action as to constitute substantially a new suit begun that

day."  *Id.* at 965 (internal quotations omitted).  Second, revival may be allowed if it

appears that the plaintiff sought "to mislead the defendant about the true nature of his

suit and thereby dissuade him from removing it, includ[ing] in his initial complaint filed

in state court an inconsequential but removable federal count unlikely to induce

removal and then, after the time for removal had passed without action by the

defendant, amended the complaint to add the true and weighty federal grounds that he

had been holding back."  *Id.*

Even these circumstances, however, must be considered in the context of the

policy behind having a limited removal window in the first place.  *See id.* ("[T]he right to

revive must be determined in each case with reference to its purposes and those of the

30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibilities between state and federal courts.").  As Judge Posner noted, maintaining a short leash on removal rights guards against giving a defendant an "undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system."  *Id.*  The limited removal window also avoids the delay and waste caused by beginning proceedings over again when substantial progress may already have been made in the state court.  *Id.*  Accordingly, in the First Circuit, as elsewhere, "removal statutes are strictly construed . . . and defendants have the burden of showing the federal court's jurisdiction."  *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999) (citations omitted).

      1. <u>Substantially New Suit</u>

      As noted, judicial revival may be allowed where a defendant faces a "substantially new suit" upon an amended complaint.  *Wilson*, 668 F.2d at 965.  "[F]or an amended claim to give rise to a new right of removal" in this situation, however, "it must do more than merely assert a new legal theory of recovery based on the same set of facts."  *McKenna*, 704 F. Supp. at 311.  That is why in *Do*e, for example, the defendant-university's late removal under the revival exception ultimately failed.  There, the original complaint had a single section 1983 civil rights claim and the amended complaint added a new federal claim under Title IX, Education Amendments of 1982, 20 U.S.C. § 1681 *et seq.* (which, unlike section 1983, was not subject to the sovereign

immunity doctrine), as well as new state-law claims for negligence and sexual assault. *Id.*, 464 F. Supp. 2d at 1260-61.  The court found that, "[w]hile the allegations in the amended complaint differ[ed] somewhat from the original § 1983 action, both complaints contain[ed] the same essential allegation-that [the defendant-university] violated Plaintiff's rights by failing to protect her from [an assailant] despite knowledge of a prior sexual assault by him."  *Id.* at 1262.  *See also Dunn*, 166 F. Supp. 2d at 1279-80 (no revival allowed -- even though the new suit added five defendants and a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") -- since "the case remains, at base, a contract action"); *McKenna*, 704 F. Supp. at 311 (rejecting revival theory even though the first complaint presented a "personal injury" action while the amended complaint presented a "wrongful death" action with a "measure of damages [that was] different" as well as an "added allegation that the cause of [the plaintiff]'s death was a neurological disorder caused by the accident").

Here, the amended complaint presents facts that are virtually identical to those alleged in the original complaint.  (Compare Compl. ¶¶ 1-43 with Amended Compl ¶¶ 1-44.)  The parties, too, have remained the same.  Moreover, while the amended complaint invokes new civil rights statutes, those additions, in the court's estimation, have not created a "substantially new suit."  As before, each new cause of action specifically incorporates the same body of factual contentions and makes the same essential allegation -- that Defendants subjected Plaintiffs to discriminatory and retaliatory treatment (and violated other state-based statutory and common law prohibitions) based, in large part, on Rivera's Puerto Rican heritage.  Put simply, the

11

court finds that the changes made by Plaintiffs' amended complaint "are not so drastic that the purposes of the 30-day limitation would not be served by enforcing it." *Doe*, 464 F. Supp. 2d at 1262.

To be sure, Plaintiffs' amendments, for the first time, alleged a conspiracy among the defendants to violate Plaintiffs' civil rights and might create exposure to greater damages. But, in the end, those additions are of little moment. *See id.* (noting, without comment, that the new complaint sought additional damages from the defendant); *Dunn*, 166 F. Supp. 2d at 1279-80 (finding immaterial the addition of a new RICO claim); *McKenna*, 704 F. Supp. at 312 ("A change in the amount of damages sought . . . does not give rise to a new removal right."). Moreover, Defendants cite no case law in which judicial revival was allowed in any way remotely similar to the instant circumstances. The one decision Defendants do cite, *Johnson* -- apparently "the *only* reported case . . . which actually *relies on* this exception," *Dunn*, 166 F. Supp. 2d at 1279 (emphasis in original) -- is readily distinguishable.[1]

In sum, the amended complaint adds practically no new facts or parties, includes all the original claims, and brings new causes of action that are similar in kind to the original counts. Accordingly, the court has little choice but to recommend that

---

[1] In *Johnson*, two of five co-defendants in the original complaint became plaintiffs through an amended complaint; moreover, what had been an unlawful conversion claim against the remaining defendants became a contract and fraud suit exposing those defendants to punitive damages for the first time. *See id.*, 227 F.3d at 236. In allowing judicial revival, the *Johnson* court stated that "the allegations contained in the [amended complaint] bear no resemblance whatsoever to the allegations of the [original complaint] . . . . [T]he parties to the original action are now aligned in a completely different manner." *Id.* at 242. No such facts exist here.

12

Defendants' first theory of judicial revival be rejected.

     2.  <u>Intentionally Holding Back of True and Weighty Federal Claims</u>

In the court's view, Defendants' second theory of judicial revival -- that Plaintiffs intentionally held back their "true and weighty" federal claims until after the removal period with the intention of misleading Defendants from removing, *Wilson*, 668 F.2d at 965 -- is even less compelling.  For one thing, other than Defendants' speculation, there is no indication that the additional federal claims are the "true and weighty" ones.  Rather, civil rights violations remain the backdrop of both the original and amended complaints.  Also, as indicated, identical facts and parties undergird both pleadings.

More fundamentally, however, there is no evidence that Plaintiffs intentionally held back their "new" federal claims in an attempt to dodge removal.  At best, Defendants point to a letter dated March 31, 2010, in which Plaintiffs sought permission from the Superior Court to file a reply brief in further support of their motion to amend the complaint, which motion was then outstanding.  (See Doc. No. 8 (Defs.' Brief) at 12; Doc. No. 1 (Defs.' Notice of Removal), Ex. K.)  Plaintiffs indicated in their letter that the added civil rights claims were supported by a 1996 case from New York.  (Defs.' Notice of Removal, Ex. K (citing *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 685-86 (S.D.N.Y. 1996).)  Given that letter, Defendants now assert, somewhat curiously, that

        it is apparent that the Plaintiffs knew or should have known
        of their seven (7) recently added federal claims at the time
        of filing their initial complaint, but delayed in filing their
        motion to amend the complaint until a year after the
        Defendants['] initial removal rights expired and on the even

> [sic] of summary judgment in order to mislead the
> Defendants as to the true nature of their federal grounds . . .
> which they held back.

(Defs.' Brief at 12.)  Defendants' circular logic -- that Plaintiffs must have held back

their new civil rights claims because they knew of the 1996 New York case on March

31, 2010 -- makes little sense and merits even less discussion.

In contrast, Plaintiffs' counsel has tendered an affidavit which all but eviscerates

Defendants' "bad faith" argument both on the facts and the law.  (Doc. No. 13 (Pls.'

Reply), Ex. 1.)  Plaintiffs' counsel avows that he originally "included all of the [viable

civil rights claims] of which [he] was aware" (*id.* ¶ 6); that he "d[]id not recall the precise

date on which [he] considered amending [the] Complaint to add additional federal civil

rights claims" but that it was probably "sometime in February of 2010" (*id.* ¶¶ 10-11);

that approximately "in late February, 2010," he "called a former colleague at the Civil

Rights Division at the U.S. Department of Justice and discussed additional civil rights

claims that [his] clients might bring against the Defendants" (*id.* ¶¶ 13-14); and that he

drafted his motion to amend "on March 10, 2010 and on March 15, 2010" and

requested permission to file it shortly thereafter (*id.* ¶¶ 15-16).  These assertions fully

square with the state court proceedings.

As importantly, Plaintiffs' counsel avows, under pains and penalty of perjury that

he "did not 'hold back' any federal claims when [he] filed the original Complaint" and

that his "decision and [his] clients' decision to seek leave to amend the Complaint to

add additional federal civil rights claims was not the part of any scheme to deprive the

Defendants of their right to proceed in federal court."  (*Id.* ¶¶ 17-18.)  While these sorts

14

of conclusory avowals might be questioned in some instances, they ring true, here, for the reasons described, when comparing the original with the amended complaint.  In essence, the court concludes that Plaintiffs did not intentionally hold back their new claims in an attempt to avoid federal court jurisdiction and, therefore, will recommend that Plaintiffs' motion to remand be allowed.

B.  Plaintiffs' Request for Attorneys' Fees and Costs

For their part, Plaintiffs argue that Defendants' removal (and subsequent resistance to Plaintiffs' motion to remand), was pursued in bad faith and, accordingly, subject to payment of Plaintiffs' attorneys' fees and costs for the federal portion of this litigation.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005); *Harvard Real Estate-Allston, Inc. v. Kmart Corp.*, 407 F. Supp. 2d 317 (D. Mass. 2005).  The court disagrees.  Granted, Defendants' removal of the case to this forum appears to have coincided with their missing certain discovery deadlines as well as a dispute surrounding a particularly-contentious deposition.  Nevertheless, the judicial revival doctrine provided at least a rational basis for Defendants' removal.  Accordingly, the court will recommend that Plaintiffs' request for attorneys' fees and costs be denied.

IV.  CONCLUSION

For the reasons stated, the court recommends that Plaintiffs' motion to remand be ALLOWED but that their request for attorneys' fees and costs be DENIED.[2]

---

[2]  The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which

DATED:   July 8, 2010

                                              /s/ Kenneth P. Neiman
                                              KENNETH P. NEIMAN
                                              U.S. Magistrate Judge

---

objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.